FILED
CLERK
6/25/2015 2:50 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SALVATORE ARNONE,

                Plaintiff,

  -against-

                                              **OPINION AND ORDER**
                                              **13-CV-5168 (SJF)**

AETNA LIFE INSURANCE COMPANY,

                Defendant.
------------------------------------------------------------X
FEUERSTEIN, District Judge:

Before the Court are cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure ("FRCP") 56. Plaintiff also seeks a declaratory judgment pursuant to FRCP 57. For the following reasons, Salvatore Arnone's ("plaintiff") motion is **DENIED** and Aetna Life Insurance Company's ("defendant") motion is **GRANTED**. Defendant's counterclaim for reimbursement of its overpayment of LTD benefits to plaintiff is **GRANTED**.

**I.    Introduction**

    **A.    Facts**

        **1.    Parties**

Plaintiff was employed by Konica Minolta Business Solutions U.S.A., Inc. ("Konica") as a Traveling Account Executive.[1] Def. 56.1(a) Stmt. 1. Konica established and maintained a Group Long Term Disability Plan ("the Plan") for Konica employees and Aetna issued a group insurance policy identified as number GP-877115, effective July 1, 2004, to fund benefits under

---

[1] Pursuant to EDNY/SDNY Local Rule 56.1(d), "[e]ach statement by the movant or opponent . . . including each statement controverting any statement of material fact, must be followed by citation to evidence. Portions of plaintiff's 56.1(a) statement of material facts, however, fail to identify the location of the evidence in the record and/or do not cite to an exhibit. Where there is no citation or the Court cannot locate the evidence, those statements shall not be considered.

the Plan. *Id.* at ¶¶ 2, 3. The Plan is an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. *Id.* at ¶ 4. Plaintiff, who last worked for Konica on December 3, 2009, was a participant in the Plan; defendant was the claim administrator. *Id*. at ¶¶ 5, 6, 7.

### 2. Pertinent Plan Provisions

The Plan's "Test of Disability" states: "From the date that you first become disabled and until Monthly Benefits are payable for 36 months, you will be deemed to be disabled on any day if: you are not able to perform the material duties of your own occupation solely because of: disease or injury; and your work earnings are 80% or less of your adjusted predisability earnings. After the first 36 months that any Monthly Benefit is payable during a period of disability, you will be deemed to be disabled on any day if you are not able to work at any reasonable occupation solely because of: disease; or injury. If your own occupation requires a professional or occupational license or certification of any kind, you will not be deemed to be disabled solely because of the loss of that license or certification." *Id*. at ¶ 8.

A participant's monthly LTD benefit is based upon monthly predisability earnings and other income benefits. *Id*. at ¶ 9. "If other income benefits are payable for a given month: the monthly benefit payable under this Plan for that month will be the lesser of: the Scheduled Monthly LTD Benefit minus all other income benefits; and the Maximum Monthly Benefit, but not less than the Minimum Monthly Benefit." *Id*. at ¶ 10.

Under the terms of the Plan, "Other Income Benefits" includes: "disability, retirement, or unemployment benefits required or provided for under any law of a government. Examples are: Unemployment compensation benefits. Temporary or permanent, partial or total disability

benefits under any state or federal workers' compensation law or any other like law, which are meant to compensate the worker for any one or more of the following: loss of past and future wages; impaired earning capacity; lessened ability to compete in the open labor market; any degree of permanent impairment; and any degree of loss of bodily function or capacity. . . . Disability payments which result from the act or omission of any person whose action caused your disability. These payments may be from insurance or other sources." *Id.* at ¶ 11.

The Plan also states that "Other Income Benefits include those, due to your disability or retirement, which are payable to: you; your spouse; your children; your dependents." *Id*. at ¶ 12. Additionally, under the section entitled "Lump Sum and Periodic Payments from Any Other Income Benefits," the Plan states:

> Any lump sum or periodic other income payments that you receive will be prorated on a monthly basis over the period of time for which the payment was made. If a period of time is not indicated, Aetna will prorate the payments over a reasonable period of time, taking into account the expected length of disability payments and other relevant factors.
>
> That part of the lump sum or periodic payment that is for disability will be counted, even if it is not specifically apportioned or identified as such. If there is no proof acceptable to Aetna as to what that part reasonably is, 50% will be deemed to be for disability.

*Id.* at ¶ 13.

### 3. Plaintiff's Claim for LTD Benefits

On June 26, 2009, plaintiff was injured when he slipped in a puddle of water and fell, hitting his head, lower back and neck on a cinder block wall while at a customer's facility[2] visiting, delivering parts and checking existing equipment. *Id.* at ¶¶ 14, 15. During an initial

---

[2] The company's name is MEOPTA U.S.A., Inc.

interview on January 6, 2010, plaintiff advised Aetna that as a result of his injuries, he experienced significant pain, a limited range of motion in his cervical and lumbar spine and radiculopathy. *Id*. at ¶ 16. He also advised that due to his injuries, he was unable to sit, drive and stand for prolonged periods. *Id*. at ¶ 17. Aetna Analyst Christine Coen ("Coen") advised Arnone that if he were to file a personal injury lawsuit against the customer, it might be entitled to apply an offset to any monthly long term disability ("LTD") benefit award because the lawsuit would be for damages arising from the same injury that caused his alleged disability. *Id.* at ¶ 18. On December 2, 2009, plaintiff executed a reimbursement agreement wherein he agreed that if his claim for LTD benefits was approved, he would reimburse Aetna for any overpayments received due to his or his dependent's receipt of income from any other sources, including but not limited to Social Security. *Id.* at ¶ 23.

By letter dated March 12, 2010, Aetna approved plaintiff's claim for LTD benefits effective December 7, 2009 and advised that he was entitled to a monthly LTD benefit in the sum of four-thousand, eight-hundred and eighty-one dollars and four cents ($4,881.04) minus offsets due to his receipt of "other income benefits," as defined by the Plan. *Id.* at ¶ 21. Aetna also advised that because plaintiff had been awarded worker's compensation disability benefits effective December 2009 in the sum of one-thousand and one-hundred dollars ($1,100.00) every two (2) weeks, i.e., two-thousand, three-hundred and eighty-three dollars and thirty-three cents ($2,383.33) per month, his monthly LTD benefit would be reduced to two-thousand, four-hundred, ninety-seven dollars and sixty-eight cents ($2,497.68) per month. *Id.* at ¶ 22.

    4.  **Aetna's Review of Plaintiff's Claim for Continuing LTD Benefits**

On March 25, 2010, Aetna analyst Coen received a call from a representative of One

Beacon Insurance Company, the insurance carrier for the client at whose worksite plaintiff was injured, who advised that plaintiff had filed a personal injury lawsuit based upon his accident. *Id.* at ¶ 24. By letter dated March 25, 2010, Coen notified plaintiff that his monthly LTD benefits were subject to offsets for his receipt of other income benefits, which specifically included any award of Social Security Disability Income ("SSDI") benefits and "[d]isability payments which result from the act or omission of any person whose action caused your disability," such as proceeds from a personal injury lawsuit. *Id.* at ¶ 25. Coen also advised plaintiff of the Plan's provision for other income benefits and his receipt of any lump sum or periodic payments. *Id.* at ¶ 26.

### a. Plaintiff is Awarded SSDI Benefits

On or around April 29, 2010, Aetna contacted plaintiff to inquire as to whether he had applied for primary and dependent SSDI benefits. *Id*. at ¶ 27. Plaintiff responded that he had not applied for primary SSDI benefits and inquired whether there would be an offset if his children received dependent SSDI ("DSSDI") benefits based upon his disability. *Id*. at ¶ 28. Aetna advised that DSSDI benefits, to the extent they arose from plaintiff's disability, were considered "other income benefits" under the Plan and, consequently, Aetna would be entitled to an offset for plaintiff's monthly LTD benefit in the amount of the DSSDI. *Id*. at ¶ 29.

On April 30, 2011, Aetna was advised by Allsup, Inc., a company that provides SSDI claim services, that plaintiff was awarded retroactive SSDI benefits in the sum of two-thousand, four-hundred and fourteen dollars ($2,414.00) per month, effective December 2009. *Id*. at ¶ 30. Plaintiff also received a retroactive award of SSDI benefits in the sum of forty-thousand, one-hundred and twenty-five dollars and twenty-eight cents ($40,125.28) for the period of December

2009 through April 20, 2011. *Id*. at ¶ 31. By letter dated April 22, 2011, Aetna informed plaintiff that having paid LTD benefits during the relevant time period, it was entitled to recover the full amount of overpayments that resulted from the retroactive award of SSDI benefits. *Id*. at ¶¶ 32, 33. Aetna also advised that plaintiff's monthly LTD benefit would be reduced by the amount of his award of monthly SSDI benefits and that it was still entitled to apply an offset of two-thousand, three-hundred, eighty-three dollars and thirty-three cents ($2,383.33) per month for workers' compensation ("W/C") disability benefits. *Id*. at ¶¶ 34, 35. Thus, based upon the SSDI and W/C monthly benefits, plaintiff was receiving other income benefits in the sum of four-thousand, seven-hundred, ninety-seven dollars and thirty-three cents ($4,797.33) per month. *Id*. at ¶ 36. Aetna requested that plaintiff reimburse it for the forty-thousand, one-hundred, twenty-five dollar and twenty-eight cents ($40,125.28) overpayment in a lump sum, which plaintiff refused to do until after his personal injury lawsuit was settled. To date, defendant has not been reimbursed. *Id*. at ¶¶ 37-39.

       **b.**  **Plaintiff's Children Are Awarded Dependent SSDI Benefits**

  On May 9, 2011, Aetna was advised that plaintiff's two (2) children were awarded DSSDI benefits, based upon plaintiff's disability, in the sum of six-hundred and three dollars ($603.00) each for a total monthly benefit of one-thousand, two hundred and six dollars ($1,206.00). *Id*. at ¶¶ 40, 41. The Social Security Administration ("SSA") also approved plaintiff's claim for DSSDI retroactive benefits in the sum of twenty-thousand, five-hundred and two dollars ($20,502.00) for the period December 2009 through April 30, 2011. *Id*. at ¶ 42.

       **c.**  **Plaintiff's Workers' Compensation Benefits are Discontinued**

  On October 23, 2012, plaintiff advised Aetna that his W/C compensation disability

benefits had been discontinued. *Id*. at ¶ 43. By letter dated October 23, 2012, Aetna requested documentation demonstrating that his W/C disability benefits had been discontinued so it could adjust his monthly LTD benefits accordingly. *Id*. at ¶ 44.

### d. Plaintiff's Personal Injury Lawsuit is Settled

By letter January 9, 2013, plaintiff's attorney requested that Aetna reimburse plaintiff for the W/C offsets it had applied to his monthly LTD benefits because plaintiff had reimbursed the W/C insurance carrier from the proceeds he received from settling his personal injury lawsuit. *Id*. at ¶ 45. As proof, plaintiff attached a letter from counsel for the W/C insurance carrier approving plaintiff's settlement in the sum of eight-hundred, fifty-thousand dollars[3] ($850,000.00) and noting that as part of the settlement, plaintiff agreed to settle the W/C lien in the sum of two-hundred, thirty-two thousand, eight-hundred, forty-eight dollars and fifty-nine cents ($232,848.59). *Id*. at ¶ 46.

On January 23, 2013, during a telephone call with Aetna, plaintiff confirmed that he had settled his personal injury lawsuit and inquired as to whether the settlement would result in any further offset of his monthly LTD benefit. *Id*. at ¶ 47. By facsimile to plaintiff's counsel dated February 11, 2013, Aetna stated that it required more information to determine the effect of the settlement on plaintiff's LTD benefits and requested that plaintiff provide "an itemized list of the liens that were paid out of his settlement for medical bills, income replacement, attorney's fees, etc." and that information be provided regarding that portion of the settlement designated as income replacement. *Id*. at ¶¶ 48-50.

By letter dated February 12, 2013, plaintiff's counsel advised Aetna that his employer's

---

[3] Hereinafter "$850,000."

W/C insurance carrier had a three-hundred, forty-two thousand and seventy-two dollars and twenty-five cents ($342,072.25) lien on the settlement proceeds. *Id*. at ¶ 51. Plaintiff's counsel also informed Aetna that due to an automatic statutory reduction of 32.9% for attorney's fees, plaintiff was required to repay 67.1% of the worker's compensation lien out of the settlement award received from the personal injury lawsuit. *Id*. at ¶ 52. On March 15, 2013, plaintiff's counsel contacted Aetna and again stated that plaintiff was required to satisfy the lien held by his employer's W/C insurance carrier and that he was also required to pay two-hundred, seventy-one thousand, seven-hundred, eight-five dollars and seventy-three cents ($271,785.73) in litigation fees and expenses related to his personal injury lawsuit, and that the entire amount of the settlement was for "pain and suffering, and no wage replacement was included." *Id*. at ¶¶ 53-55.

    e.  **Aetna's Financial Triage Unit Receives Plaintiff's Settlement Information**

On March 18, 2013, Aetna forwarded plaintiff's claim file to its Financial Triage Unit ("FTU") to determine whether it was entitled to any further offsets with respect to plaintiff's settlement. *Id*. at ¶ 56. The FTU responded that it required the actual settlement agreement to determine how or if the settlement proceeds were earmarked for, e.g., pain and suffering/lost income. *Id*. at ¶¶ 57, 58. On April 11, 2013, Aetna requested a copy of the signed settlement agreement, which demonstrated that plaintiff agreed to settle any and all claims against MEOPTA U.S.A., Inc., for $850,000, but did not categorize or specifically designate a portion of the proceeds for pain and suffering, lost income due to disability, attorney's fees, etcetera. *Id*. at ¶¶ 59-63.

On April 18, 2013, Aetna's FTU issued a financial review, which determined that based

upon the settlement agreement and the terms of the Plan, Aetna's offset against plaintiff's future LTD benefit payments was two-hundred, seventy-five, five-hundred, fifty dollars and seven cents ($275,550.07). *Id*. at ¶ 65. To determine this amount, the FTU relied upon the following Plan terms:

> Lump Sum and Periodic Payments From Any Other Income Benefits- Any lump sum or periodic other income payments that you receive will be prorated on a monthly basis over the period of time for which the payment was made. If a period of time is not indicated, Aetna will prorate the payments over a reasonable period of time, taking into account the expected length of disability benefits and other relevant factors.
>
> That part of the lump sum or periodic payment that is for disability will be counted, even if it is not specifically apportioned or identified as such. If there is no proof acceptable to Aetna as to what part reasonably is, 50% will be deemed for disability.

*Id*. at ¶ 66. Before applying the offset, the FTU reduced the settlement amount by the amount of attorney's fees and expenses incurred during the personal injury litigation, i.e., two-hundred, seventy-one thousand, seven-hundred, eight-five dollars and seventy-three cents ($271,785.73), and by a portion of the W/C benefits Aetna previously offset from plaintiff's monthly LTD disability benefit, i.e., twenty-seven thousand, four-hundred, seventy-one dollars and thirty-two cents ($27,471.32), which was based upon the specific percentage of W/C benefits plaintiff was required to reimburse the employer's W/C insurance carrier. *Id*. at ¶ 67. Based upon these deductions, the FTU determined that plaintiff netted five-hundred and fifty-one thousand, one-hundred dollars and fourteen cents ($551,100.14) from the personal injury lawsuit. *Id*. at ¶ 68.

The terms of the Plan required Aetna to apply an offset of 50% of the total net settlement amount, i.e., two-hundred, seventy-five thousand, five-hundred and fifty dollars and seven cents ($275,550.07), and thus, the FTU determined that Aetna had to offset that amount from any

future benefit payments to plaintiff in accordance with the Plan's terms. *Id*. at ¶¶ 69, 70.

### 5. Aetna's Determination of the Appropriate Offset Amount for Plaintiff's Personal Injury Settlement

By letter dated May 1, 2013, Aetna Senior LTD Benefit Manager Angela Hobbs ("Hobbs") advised plaintiff that pursuant to the terms of the Plan, it was required to offset his LTD benefits in the sum of two-hundred, seventy-five thousand, five-hundred and fifty dollars and seven cents ($275,550.07) as a result of the settlement of his personal injury lawsuit. *Id*. at ¶ 71. Hobbs broke down plaintiff's future benefit payments as follows:

| | |
|---|---|
| Pre-disability earnings: | $8,135.02 |
| 60% Monthly Benefit Allowance: | $4,810.01 |
| Less Primary SSDI offset: | $2,414.00 |
| Less DSSDI offset: | $1,206.00 |
| Less W/C Settlement | |
| (Personal injury lawsuit offset): | $1,791.23 |
| Gross Minimum Monthly Benefit Allowance: | $114.00 |

*Id*. at ¶ 72. Hobbs also informed plaintiff that his monthly LTD benefit would be one-hundred, fourteen dollars ($114.00), the minimum benefit amount required by the Plan. *Id*. at ¶ 73. Hobbs advised plaintiff that pursuant to ERISA, he was entitled to file an administrative appeal of Aetna's offset determination and that to perfect the appeal, he should submit "pertinent identifying information, comments, documents, records and other information [he] would like to have considered." *Id*. at ¶ 74. Finally, Hobbs advised that there was still an outstanding overpayment of his claim in the sum of forty-thousand, one-hundred, twenty-five dollars and twenty-eight cents ($40,125.28), resulting from his retroactive primary SSDI award. *Id*. at ¶ 75.

### 6. Plaintiff's Appeal of Aetna's Offset Determination

By letter dated June 12, 2013, plaintiff's counsel appealed Aetna's offset determination of

his settlement award. *Id*. at ¶ 76. Plaintiff argued that (1) Aetna should credit him with an amount equal to the W/C disability benefits that it previously offset from his monthly LTD benefits because he was required to reimburse the worker's compensation insurance carrier for the amount of those benefits; (2) Aetna was not entitled to offset any amount of benefits from the settlement proceeds because the settlement was limited to damages for pain and suffering and for loss of income, but not for disability; and (3) the dependent SSDI benefits should not have been offset pursuant to the terms of the Plan.[4] *Id*. at ¶¶ 77-79.

### 7. Aetna's Final Determination

By letter dated July 24, 2013, Aetna Senior Technical Specialist Kaz Takashima ("Takashima") advised plaintiff that Aetna had decided to uphold its determination regarding the appropriate offset amount for his personal injury settlement. *Id.* at ¶¶ 81, 82. Takashima explained that it had not offset plaintiff's monthly LTD benefits based upon his receipt of W/C benefits; rather, it had reduced plaintiff's monthly LTD benefit award by the exact amount he received from W/C for disability, i.e., two-thousand, three-hundred, eighty-three dollars and thirty-three cents ($2,383.33) per month for a total of eighty-three thousand, four-hundred, sixteen dollars and sixty-seven cents ($83,416.67), during the period December 7, 2009 through November 12, 2012. *Id.* at ¶ 83. Takashima further advised that because plaintiff only repaid the portion of his W/C lien that was not attributed to attorney's fees, 32.9% of the total lien amount, Aetna had credited plaintiff with an amount equal to all but 32.9% of the amount it had previously offset, i.e., twenty-seven thousand, four-hundred and seventy-one dollars and thirty-

---

[4] Aetna received no documentation from plaintiff to support his arguments. Def. 56.1 Stmt. ¶ 80.

two cents ($27,471.32). *Id.* at ¶ 84.

In addition, Takashima's letter advised that the settlement agreement submitted by plaintiff did not explain the basis for the settlement or indicate its allocation, e.g., pain and suffering/lost income due to disability/attorney's fees and thus, pursuant to the Plan's terms, Aetna was required to offset 50% of the settlement amount against his LTD benefits and that the appropriate monthly offset of the settlement proceeds was determined to be one-thousand, seven-hundred, ninety-one dollars and twenty-three cents ($1,791.23) per month for the remaining period that plaintiff was entitled to LTD benefits. *Id.* at ¶¶ 85, 86. Last, as per the Plan's express terms, Aetna was required to offset plaintiff's monthly benefits by the amount of "other income" received by his family as a result of his disability, including dependent SSDI benefits. *Id.* at ¶ 87.

### B. Plaintiff's Complaint and Defendant's Counterclaim

Plaintiff's first and third claims seek to recover LTD benefits pursuant to ERISA, 502(a)(1)(B), 29 U.S.C. § 1132, and allege that: plaintiff is entitled to reimbursement of the amount by which defendant offset his LTD benefits with W/C benefits; plaintiff's future LTD benefits should not be offset by his settlement award; and DSSDI should not be considered in calculating his LTD benefits.[5] Plaintiff's second claim alleges breach of contract and requests a declaratory judgment that defendant is obligated to pay plaintiff a sum certain until he reaches age sixty-five (65).

Defendant's counterclaim seeks reimbursement for overpayment of Plan LTD benefits in the sum of forty-thousand, one-hundred, twenty-five dollars and twenty-eight cents ($40,125.28).

---

[5] The complaint does not expressly state a first cause of action, however, the wherefore clause demands judgment on the "first cause of action in the sum of $514,566.54."

## II. Discussion

### A. Legal Standard for Summary Judgment

A motion for summary judgment shall not be granted unless a court determines that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting FRCP 56(a)). Thus, where the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact, the moving party is entitled to judgment. *Williams v. R.H. Donnelly Corp.*, 368 F.3d 123, 126 (2d Cir. 2004). The court must resolve all ambiguities and draw all inferences in favor of the non-moving party. *Id.*; *Castle Rock Entm't, Inc. v. Carol Publ'g Grp.*, 150 F.3d 132, 137 (2d Cir. 1998). "A party opposing a properly brought motion for summary judgment bears the burden of going beyond the [specific] pleadings, and 'designating specific facts showing that there is a genuine issue for trial.' " *Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). If there is any evidence in the record from which a reasonable inference may be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper. *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).

There is a "genuine" issue of fact only if the "evidence [presented] is such that a reasonable jury could return a verdict for the nonmoving party." *Giodano v. City of New York*, 274 F.3d 740, 746-47 (2d Cir. 2001). "[A]ttempts to twist the record do not create a genuine issue of material fact for a jury." *Kim v. Son*, No. 05 Civ. 1262, 2007 WL 1989473, at *6 (E.D.N.Y. July 9, 2007). Therefore, "where the cited materials do not support the factual

assertions in the Statements, the Court is free to disregard the assertion." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001). In addition, "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996). Finally, FRCP 56(c) mandates that all facts under consideration in a motion for summary judgment be directly supported by proof in admissible form.

  B.  **ERISA Standard**

With respect to claims challenging a denial of benefits under an employee benefit plan, "[t]he Supreme Court has explained that where the plan 'grants the administrator discretionary authority to determine eligibility benefits, a deferential standard of review is appropriate.' " *Fortune v. Grp. Long Term Disability Plan for Emp. of Keyspan Corp.*, 637 F. Supp. 2d 132, 141 (E.D.N.Y. 2009) (quoting *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 132 (2d Cir. 2008)). " 'Under the deferential standard, a court may not overturn the administrator's denial of benefits unless its actions are found to be arbitrary and capricious, meaning 'without reason, unsupported by substantial evidence or erroneous as a matter of law.' " *Id.* (quoting *McCauley*, 551 F.3d at 132). " 'Substantial evidence is 'such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [administrator and] . . . requires more than a scintilla but less than a preponderance.' " *Id.* (quoting *Celardo v. GNY Auto. Dealers Health and Welfare Trust*, 318 F.3d 142, 146 (2d Cir. 2003)).

C. **The Cross Motions for Summary Judgment**

1. **Aetna's W/C and DSSDI Benefits Offsets**

Pursuant to 29 U.S.C. § 1132, "A civil action may be brought . . . (1) by a participant or beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." "Importantly, ERISA does not mandate particular benefits but instead 'governs plan operations, provides rules of fiduciary responsibility and sets forth disclosure requirements to further ERISA's policy of protecting the interests of plan participants in the benefits that employers do elect to provide.' " *Rommel v. First Unum Life Ins. Co.*, No. 94 Civ. 019, 1995 WL 390011, at *4 (N.D.N.Y. June 28, 1995) (quoting *Howard v. Gleason Corp.*, 901 F.2d 1154, 1156 (2d Cir. 1990)).

Plaintiff alleges that his W/C benefits were repaid in full from the settlement and therefore, his LTD benefits should not have been offset by W/C benefits from June 26, 2009 to August 10, 2012 and, in addition, his future LTD benefits should not be offset based upon the settlement. Furthermore, the DSSDI payments for his children should not have been deducted. Compl. ¶¶ 10-21. As a result of these allegedly improper deductions, plaintiff contends he is owed five hundred and fourteen thousand, five-hundred sixty-six dollars and fifty-four cents ($514,566.54). *Id.* at ¶ 27. Plaintiff's third claim seeks attorney's fees in the sum of fifty-thousand dollars ($50,000). *Id.* at ¶ 28.

Pursuant to the Plan's clear language, however, these deductions were permissible and therefore, not arbitrary or capricious. Dec. Takashima, Exh. A, 000035-38 (LTD plan terms

including calculation of the LTD monthly benefit and the effect of other income benefits). Moreover, there is no provision in the Plan requiring that plaintiff be reimbursed for these offsets and thus, defendant's actions did not violate the Plan's terms. Accordingly, plaintiff's motion for summary judgment on his first and third claims is denied, defendant's motion is granted and these claims, including the request for attorney's fees, are dismissed.

### 2. Breach of Contract

Plaintiff claims that defendant breached its contract to provide LTD payments pursuant to the policy and requests a declaration that defendant is obligated to pay him the sum of two-thousand, four-hundred, sixty-seven dollars and two cents ($2,467.02) per month beginning May 1, 2011 until plaintiff attains the age of sixty-five (65) on August 9, 2025. Compl. at ¶¶ 19-22.

Under 29 U.S.C. §1144(a),[6] however, "ERISA preempts state law regarding any matters that 'relate to' employee benefit plans." *Westphal v. Eastman Kodak Co.*, No. 05 Civ. 6120, 2006 WL 1720380, at *6 (W.D.N.Y. June 21, 2006). "Moreover, 'ERISA . . . sets forth a 'comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans.' This balancing 'would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress has rejected in ERISA.' " *Id.* (quoting *Romney v. Lin*, 94 F.3d 74, 80-81 (2d Cir. 1996).

---

[6] Title 29 U.S.C. §1144(a) provides, in pertinent part, that "the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title."

It is undisputed that plaintiff seeks to recover other income benefits which were deducted from his LTD benefits pursuant to the Plan and that the Plan is governed by ERISA.[7] Therefore, plaintiff's state law breach of contract claim is preempted by ERISA and plaintiff's motion for summary judgment on this claim is denied as is his request for a declaration of defendant's obligations, defendant's motion is granted and this claim is dismissed.[8]

### 3. Defendant's Counterclaim

On April 29, 2010, defendant was advised that plaintiff had been awarded retroactive SSDI benefits in the sum of two-thousand, four-hundred and fourteen dollars ($2,414.00) per month, effective December 2009 and received a lump sum retroactive award in the sum of forty-thousand, one-hundred and twenty-five dollars and twenty-eight cents ($40,125.28) for the same disability for which he receives LTD benefits. On December 2, 2009 and prior to the SSDI award, plaintiff had executed an agreement to reimburse defendant "for any and all overpayments made to [plaintiff] under the LTD policy." Dec. Takashima, Exh. B 000766. Based upon the Plan's terms regarding "other benefits," defendant overpaid plaintiff LTD benefits in the lump

---

[7] Indeed, plaintiff's complaint seeks relief under ERISA, 502(a)(1)(B), 29 U.S.C. § 1132(a) and defendant removed this case from New York Supreme Court on the basis of ERISA federal question jurisdiction (DE 1-2), which plaintiff did not contest.

[8] Insofar as plaintiff's motion for summary judgment alleges, for the first time in this action, that New York General Obligation Law ("GOL") § 5-335 applies to this case, defendant's LTD Plan contains an enforceable choice of law clause, which states that "this policy will be construed in line with the law of the jurisdiction in which it is delivered." Plaintiff's policy was delivered in Connecticut and, accordingly, New York's GOL does not apply to defendant's Plan. *See Barnes v. Am. Int'l Life Assurance Co. of New York*, 681 F. Supp. 2d 513, 520 (S.D.N.Y. 2010) ("In ERISA cases in which an insurance contract contained a choice of law provision dictating that state law would govern, courts have held that the choice of law provision controls, unless it would be unreasonable and unfair to apply state law.").

sum amount. In light of the foregoing and based upon the Plan's terms, defendant's motion for summary judgment on its counterclaim seeking reimbursement of the overpayment to plaintiff in the sum of $40,125.28, is granted.

### III. Conclusion

For the foregoing reasons, plaintiff's motion for summary judgment is **DENIED** and the complaint is dismissed in its entirety. Defendant's motion for summary judgment is **GRANTED** and its counterclaim for reimbursement of its LTD benefit overpayment to plaintiff in the sum of $40,125.28 is **GRANTED**. The pretrial conference set for August 3, 2015 is canceled and the Clerk of the Court shall close this case.

**SO ORDERED**.

Dated: June 25, 2015
      Central Islip, New York

                                               /s/
                                   Sandra J. Feuerstein, U.S.D.J.